IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAMISHA CORDOVA,

       Plaintiff,

vs.                                                                                                       1:19-cv-00126-LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Camisha Cordova's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 17), which was fully briefed on November 5, 2019. *See* Docs. 17, 22, 25, 26. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Appeals Council erred by failing to consider the additional evidence submitted by Ms. Cordova in conjunction with her request for review. I therefore GRANT Ms. Cordova's motion and remand this case for reevaluation of the ALJ's decision in light of the completed record.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Ms. Cordova was 42-years old at the time of her alleged onset of disability. AR 42, 78.[3] She is a high school graduate with two years of college, and she lives in Albuquerque with her husband, her 20-year-old daughter, and her mother-in-law. AR 58–59, 78. Ms. Cordova has not worked since 2014. AR 54.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

Ms. Cordova filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 20, 2016,[4] alleging disability since November 27, 2014, due to numerous impairments, including: degenerative disc disease in lower back, bulging disc in mid-back, cervical disc injury, severe stenosis in neck, bone spurs in neck, chronic pain, arthritis, depression, and anxiety. AR 78, 197–203.

The Social Security Administration denied Ms. Cordova's claim initially and on reconsideration. AR 78–27. Ms. Cordova then requested a hearing before an ALJ. AR 143–44. On January 9, 2018, ALJ Cole Gerstner held a hearing. AR 50–77. ALJ Gerstner issued his unfavorable decision on April 2, 2018. AR 30–49.

The ALJ found that Ms. Cordova met the insured status requirements of the Social Security Act through September 30, 2018. AR 35. At step one, he found that Ms. Cordova had not engaged in substantial, gainful activity during the relevant period since her alleged onset date of November 27, 2014. *Id*. At step two, the ALJ found that Ms. Cordova had the following severe impairments: "right hip bursitis; degenerative disc disease; right knee patellofemoral joint degenerative joint disease; and fibromyalgia." *Id*. The ALJ also determined that Plaintiff had the following non-severe impairments: "gastroesophageal reflux disease[,] . . . obesity[,] . . . depressive disorder, depression, and anxiety." AR 36.

At step three, the ALJ found that none of Ms. Cordova's impairments, alone or in combination, met or medically equaled a Listing. AR 37. Because he found that none of the impairments met a Listing, the ALJ assessed Ms. Cordova's RFC. *Id*. He found that she had the RFC to

---

[4] Ms. Cordova's application for DIB states that it was completed on August 17, 2015, but it is dated January 20, 2016. AR 197. The Court presumes the August date is a typographical error.

4

> perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant can frequently reach overhead to the left; can frequently reach overhead to the right; can frequently handle items with the left hand; can frequently handle items with the right hand; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, and crouch; and can occasionally work at unprotected heights.

AR 37–38.

At step four, the ALJ concluded that Ms. Cordova had no past relevant work. AR 42. Nevertheless, at step five, he found that Ms. Cordova was able to perform work that existed in significant numbers in the national economy, including as an office helper, furniture rental clerk, counter clerk, and merchandise marker. AR 43. Accordingly, the ALJ found Ms. Cordova not disabled. *Id*.

Ms. Cordova requested that the Appeals Council review the ALJ's unfavorable decision, and she submitted additional evidence to the Appeals Council for its review. AR 195–96. On December 14, 2018, the Appeals Council denied Ms. Cordova's request for review. AR 1–7. The Appeals Council found that Ms. Cordova's additional "evidence d[id] not show a reasonable probability that it would change the outcome of the decision," and it therefore did not "exhibit" the evidence. AR 2. Ms. Cordova timely filed her appeal with this Court on February 14, 2019. Doc. 1.[5]

**IV. Ms. Cordova's Claims**

Ms. Cordova raises four arguments for reversing and remanding this case. She maintains that (1) the Appeals Council erred in determining that the additional medical evidence that she submitted was not material; (2) the ALJ breached his duty to develop the record to clarify her mental impairments; (3) the ALJ erred by improperly rejecting the opinion of Certified

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

Physician's Assistant Andrea Bliss; and (4) the ALJ's RFC is not based on substantial evidence because he failed to adequately account for her subjective allegations of pain. Doc. 17 at 2. For the reasons that follow, the Court reaches only the first issue.

V.  **Analysis**

   A.  <u>The Appeals Council erred by failing to consider additional evidence submitted by Ms. Cordova.</u>

The ALJ issued his unfavorable decision on April 2, 2018. AR 30–49. Thereafter, Ms. Cordova submitted additional evidence to the Appeals Council, requesting that it consider the following records from Robert Krueger, Ph.D., FICPP:

1. Report of Psychological Evaluation, dated June 17, 2018 (AR 9–15);
2. Beck Depression Inventory Questionnaire, dated June 15, 2018 (AR 16–17);
3. Medical Assessment of Ability to do Work-Related Activities (Mental) (AR 19–20);
4. 12.04 Affective Disorders Listings Form, dated June 17, 2018 (AR 21);
5. 12.06 Anxiety-Related Disorders, dated June 17, 2018 (AR 22);
6. 12.08 Personality Disorders, dated June 17, 2018 (AR 23);
7. Curriculum Vitae, dated July 2017 (AR 25);
8. Certificate of Licensure, effective until July 2019 (AR 26).

AR 8. The Appeals Council determined that this additional evidence did "not show a reasonable probability that it would change the outcome of the decision." AR 2. As a result, the Council "did not exhibit this evidence." *Id*.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The Appeals Council must review additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5),

416.1470(a)(5).[6] Evidence is new "if it is not duplicative or cumulative," material "if there is a reasonable possibility that it would have changed the outcome," and it is "chronologically pertinent" when it "relates to the period before the ALJ's decision." *Threet*, 353 F.3d at 1191 (alterations omitted) (internal quotation marks omitted). The regulations that require a claimant to show a "reasonable *probability* that the additional evidence would change the outcome of the decision" can be read as a heightened materiality standard. *See Bisbee v. Berryhill*, No. 18-CV-0731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019) (unpublished) (noting that the new regulations "heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable possibility of changing the outcome, now it requires a reasonable probability of changing the outcome").

Ms. Cordova contends that the Appeals Council's disqualification of Dr. Krueger's report for lack of materiality was erroneous and requires remand. Doc. 17 at 10–11. In contrast, the Commissioner maintains that whether the evidence was new, material, and chronologically pertinent is "inapposite." Doc. 22 at 21 n.8. The Commissioner submits that the Appeals

---

[6] The Social Security Administration revised these regulations on December 16, 2016, with changes effective January 17, 2017. 81 Fed. Reg. 90, 987 (Dec. 16, 2016). Thus, the revisions were effective at the time the Appeals Council issued its decision here, on December 15, 2018. The revised regulations also provide that if the Appeals Council "does not find [the claimant] had good cause for missing the deadline to submit the evidence in [§ 404.935 and § 416.1435], the Appeals Council will send [them] a notice that explains why it did not accept the additional evidence and advise[] [them] of [their] right to file a new application." 20 C.F.R. §§ 404.970(c), 416.1470(c). Here, the Appeals Council did not discuss whether Ms. Cordova had good cause for missing the deadline to submit her additional evidence, disqualifying the evidence only on the basis that it "d[id] not show a reasonable probability that it would change the outcome of the decision." AR 2. Moreover, the Commissioner does not contend that Ms. Cordova lacked good cause for the untimely submission of Dr. Krueger's reports. Consequently, the Court will forgo a good-cause analysis here. *See Emmons v. Saul*, No. 19-CV-0102 KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020) (declining to consider whether the plaintiff had good cause for failing to submit his additional evidence earlier, where the Appeals Council rejected the additional evidence based upon a lack of chronological pertinence rather than a lack of good cause).

7

Council actually considered the additional evidence, finding that it met the three requisite qualifications of newness, materiality, and chronological pertinence, but that it was simply inadequate to "render the ALJ's decision unsupported by substantial evidence." *Id*. (citing *Vallejo v. Berryhill*, 849 F.3d 951, 955 (10th Cir. 2017)). These contrasting arguments reveal a divide in the parties' understanding of the Appeals Council's treatment of Ms. Cordova's additional evidence. To resolve this conflict, the Court turns to the Tenth Circuit's rationale in *Vallejo*, the case upon which the Commissioner relies.

In *Vallejo*, the Tenth Circuit held that when the Appeals Council accepts and considers additional evidence submitted by a claimant, it becomes a part of the record to be considered by the Court in performing a substantial evidence review. 849 F.3d at 955. But this case is distinguishable from *Vallejo*. Here, the Appeals Council explicitly declined to "exhibit" the additional evidence and found that it "d[id] not show a reasonable probability that it would change the outcome of the decision." AR 2. The "reasonable probability" standard is one that "relates to whether evidence qualifies for consideration (and therefore review by the Appeals Council) and does not indicate how the Appeals Council evaluated the evidence in conjunction with the rest of the record." *Holder v. Berryhill*, No. 17-CV-1206 LF, 2019 WL 2716758, at *4 (D.N.M. June 28, 2019) (citing *Threet*, 353 F.3d at 1191–92; *Bisbee v. Berryhill*, No. 18-CV-0731 SMV, 2019 WL 1129459, at *3 & n.5 (D.N.M. Mar. 12, 2019)). Thus, in determining that Ms. Cordova's additional evidence did not satisfy the reasonable probability standard or merit exhibiting, the Appeals Council implicitly disqualified the evidence from consideration in a substantial evidence review. *See Secatero v. Saul*, No. 19-CV-0087 SCY, 2020 WL 419463, at *5 (D.N.M. Jan. 27, 2020) (rejecting the Commissioner's argument that the Appeals Council actually "considered" the additional evidence and concluding instead that the Council's

8

"dismissal of the additional evidence's import [under the 'reasonable probability' standard] indicate[d] that it ultimately found the evidence did not qualify for consideration at all").

The Appeals Council's refusal to consider Ms. Cordova's additional evidence has implications for this Court on review. Because the Appeals Council did not consider the additional evidence in conjunction with a review of the entire record, the Court may not consider the additional evidence in a review of the denial of benefits "under the deferential substantial-evidence standard." *Chambers v. Barnhart*, 389 F.3d 1138, 1143 (10th Cir. 2004). Instead, the Court is constrained to determine, under *de novo* review, whether the Appeals Council erroneously refused to consider qualifying additional evidence. *See Secatero*, 2020 WL 419463, at *5. If so, "the case must be remanded so that the Appeals Council may evaluate the ALJ's decision in light of the completed record." *Id*. In short, the proper inquiry is the one advanced by Ms. Cordova: whether the additional evidence qualifies as new, material, and chronologically pertinent. *See Krauser*, 638 F.3d at 1328.

1. *The additional evidence is new.*

Ms. Cordova insists that the records and reports from Dr. Krueger constitute "new" evidence. Doc. 17 at 11. Additional evidence is "new" if it is "not duplicative or cumulative." *Threet*, 353 F.3d at 1191. Ms. Cordova maintains that the subject records are neither. The Court agrees.

First, the evaluations, medical assessments, and listings forms simply did not exist at the time the ALJ issued his decision in this case. The ALJ issued his decision on April 2, 2018, and Dr. Krueger evaluated Ms. Cordova two months later, in June 2018. *Compare* AR 33–49 *with* AR 9–26. Dr. Krueger's assessment also includes testing that did not appear elsewhere in Ms. Cordova's medical records, including the Working Memory Index Portion and Processing Speed

9

Index Portion, both from the Wechsler Adult Intelligence Scale IV ("WAIS-IV"). *See* AR 9. Further, Dr. Krueger's Medical Assessment of Ability to Do Work-Related Activities (Mental) provides the only opinions in the record as to how Ms. Cordova's specific mental limitations affect her ability to do work-related activities. *See* AR 19–20.

Given the timing of his evaluation, Dr. Krueger also had the unique opportunity to review all of Ms. Cordova's previous medical records from the entire relevant period before offering his own opinions, rendering his opinions "new" in that sense as well. *See* AR 9–26. While the Commissioner contends that "it does not appear that [Ms. Cordova] provided Dr. Krueger any of her mental health treatment notes," Doc. 22 at 22, Dr. Krueger's report itself suggests otherwise. According to the report, Dr. Krueger allocated an hour of his time to the review of Ms. Cordova's medical records, and he explicitly stated that he "reviewed numerous medical records," including records showing diagnoses of "depression and anxiety." *See* AR 9–10. The Court has no reason to dispute Dr. Krueger's statement that he reviewed Ms. Cordova's medical records, including her mental health records. Ultimately, the Court has little difficulty finding that Dr. Krueger's reports and opinions constitute new evidence before the Appeals Council.

   2. *The additional evidence is chronologically pertinent.*

Although the subject evidence was authored months after the ALJ's decision in this case, Ms. Cordova maintains that it remains chronologically pertinent. Doc. 17 at 13–14. The Commissioner takes no position either way. *See* Doc. 22 at 21–25.

Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ—that is, "the period 'on or before the date of the [ALJ's] hearing *decision*.'" *Chambers*, 389 F.3d at 1143 (citing 20 C.F.R. § 404.970(b)). Significantly, in assessing chronological pertinence, the Tenth Circuit has not focused on whether the evidence pre-dated the ALJ's

decision but instead focuses on whether the new evidence was pertinent to the issues that were before the ALJ at the time of the decision. *See Padilla v. Colvin*, 525 F. App'x 710, 711 (10th Cir. 2013).

Here, the records from Dr. Krueger bear upon mental impairments considered by the ALJ during the relevant period: Ms. Cordova's depression and anxiety. The ALJ noted that Ms. Cordova had been diagnosed with depressive disorder, depression, and anxiety but determined that these impairments were non-severe. AR 36. Thus, Dr. Krueger's evaluation of these same impairments cannot be characterized as an evaluation of new, previously unconsidered mental conditions, but instead a corroboration of impairments identified by Ms. Cordova's prior medical records. Further, Dr. Krueger's evaluation came mere months after the ALJ issued a decision passing upon the severity of the same mental impairments.

The Medical Assessment of Ability to Do Work-Related Activities completed by Dr. Krueger instructed him to consider Ms. Cordova's "medical history and chronicity of findings as from 2015 to current examination." AR 19. There is no indication in the record that Dr. Krueger neglected to do so. Instead, the subject records appear to contain his longitudinal perspective of Ms. Cordova's mental impairments. Dr. Krueger explained that Ms. Cordova reported having "issues with depression since 2015" for which she previously took Nortriptyline and now takes Effexor. AR 11. Likewise, he noted that Ms. Cordova experienced "difficulties with anxiety since she was injured in 2015," adding that "she does show ongoing evidence of post-traumatic stress disorder" following that injury. AR 14. Dr. Krueger's report addressed earlier medical reports and findings, and his work indicates that it was his intent to offer findings and opinions applicable not only to the date of his evaluation but also to the period of time relevant to the ALJ's decision. *See* AR 9–26. In other words, the relevance of Dr. Krueger's reports are not

restricted to the period after the April 2, 2018 disability decision. Accordingly, the additional evidence is chronologically pertinent.

### 3. *The additional evidence is material.*

Before 20 C.F.R. §§ 404.970 and 416.1470 were revised in 2017, evidence was considered "material" if there was a "reasonable *possibility* that it would have changed the outcome." *See Threet*, 353 F.3d at 1191 (emphasis added). But the recent revisions to these regulations have effectively heightened the materiality standard, requiring a claimant to now show a "reasonable *probability*" that the additional evidence would have changed the outcome of the disability claim. *See Holder*, 2019 WL 2716758, at *4 (citing *Bisbee*, 2019 WL 1129459, at *3 n.5) (explaining that the reasonable probability standard "can be read as a heightened materiality standard"); *Tolbert-Taylor v. Saul*, No. 19-CV-0195 CG, 2020 WL 376639, at *5 (D.N.M. Jan. 23, 2020) (explaining that in the District of New Mexico the revisions in the regulations have "been interpreted to 'heighten[ ] the claimant's burden to prove materiality'"). Thus, the materiality of Dr. Krueger's report and records hinges on whether there is a reasonable probability that they would have changed the outcome of Ms. Cordova's disability claim. The Appeals Council determined that they would not. But Ms. Cordova insists that this determination was in error.

Conducting a *de novo* review of the materiality of Dr. Krueger's reports, the Court begins by comparing the ALJ's RFC determination to the opinions expressed in Dr. Krueger's reports. The ALJ found Ms. Cordova capable of light work, with frequent overhead reaching and handling of items with both hands, but with certain additional restrictions. AR 37. More specifically, the ALJ restricted Ms. Cordova to only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or working at unprotected heights. AR 38. He also

found that Ms. Cordova's impairments precluded her from climbing ladders, ropes, or scaffolds. *Id*. Significantly, though, the ALJ did not include any mental limitations in Ms. Cordova's RFC. *Id*. In fact, at step two of the sequential evaluation process, the ALJ determined that Ms. Cordova's "medically determinable mental impairments of depressive disorder, depression, and anxiety, [did] not cause more than minimal limitation in [her] ability to perform basic mental work activities and [were] therefore nonsevere." AR 36. While the ALJ acknowledged that Ms. Cordova had been diagnosed with depression and anxiety in 2016 and assessed with depressive disorder in October 2017, he relied upon other normal psychological findings within her medical records to support his determination that her depression and anxiety were not severe impairments. *Id*. (citing AR 661, 690). He noted that Ms. Cordova was "cooperative" and had "appropriate mood and affect and normal judgment" at an October 2015 examination; that she had "intact memory" and "no depression or anxiety" at a September 2016 examination; and that she showed "no signs of cognitive dysfunction" and "had appropriate attention and concentration" at November 2017 examinations. AR 36 (citing AR 524, 661, 674, 687, 690). According to the ALJ, Ms. Cordova's August 2016 Function Report also indicated that she was able to prepare her own meals, drive, shop in stores, watch television and movies, crochet, count change, use a checkbook, and get along with others. AR 36–37 (citing AR 234–36).

The ALJ concluded that Ms. Cordova's mental impairments caused no more than "mild" limitations in the applicable functional areas. AR 37. In doing so, he assigned little weight to the opinions of Krishna Chari, Psy.D., Ms. Cordova's treating psychologist. AR 41. Although the ALJ noted Dr. Chari's opinions that Ms. Cordova "ha[d] marked difficulties in maintaining

13

social functioning and in maintaining concentration, persistence, or pace,"[7] *id*. (citing AR 774–75), he relied on the normal psychological findings in the record as well as Ms. Cordova's Function Report to conclude that Dr. Chari's "opinion [was] not consistent with or supported by the record." *Id*.

Comparing the ALJ's findings with those of Dr. Krueger, the Court finds that, like Dr. Chari, Dr. Krueger found marked limitations in Ms. Cordova's functional abilities. More specifically, Dr. Krueger found that Ms. Cordova had *marked*[8] mental limitations caused by psychological symptoms in her ability to: (1) "[u]nderstand and remember detailed instructions"; (2) "[c]arry out detailed instructions"; (3) "[m]aintain attention and concentration for extended period (i.e. 2-hour segments)"; (4) "[p]erform activities within a schedule, maintain regular attendance and be punctual within customary tolerance"; (5) "[s]ustain an ordinary routine without special supervision"; (6) "[c]omplete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods"; (7) "[i]nteract appropriately with the general public"; (8) "[r]espond appropriately to changes in the work place"; and (9) "[t]ravel in unfamiliar places or use public transportation." AR 19–20. Additionally, Dr. Krueger found that

---

[7] Technically, Dr. Chari completed two listings forms, with findings of two marked restrictions in each. In the first form, he opined that Ms. Cordova's Affective Disorder caused a "[m]arked restriction of activities of daily living" as well as "[m]arked difficulties in maintaining concentration, persistence, or pace." AR 774. In the second form, he opined that Ms. Cordova's Anxiety-Related Disorders caused a "[m]arked restriction of activities of daily living" as well as "[m]arked difficulties in maintaining social functioning." AR 775.

[8] The Medical Assessment form completed by Dr. Krueger defined "marked" as "[a] severe limitation which **precludes** the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule." AR 19.

Ms. Cordova had *moderate*[9] mental limitations caused by psychological symptoms in her ability to: (1) "[r]emember locations and work-like procedures"; (2) "[c]arry out very short and simple instructions"; (3) "[w]ork in coordination with/or proximity to others without being distracted by them"; (4) "[a]ccept instructions and respond appropriately to criticism from supervisors"; (5) "[g]et along with coworkers or peers without distracting them or exhibiting behavioral extremes"; (6) "[m]aintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness"; (7) "[b]e aware of normal hazards and take adequate precautions"; and (8) "[s]et realistic goals or make plans independently of others." *Id*. Clearly, Dr. Krueger's opinion includes many limitations not accounted for in the ALJ's RFC.

Ms. Cordova argues that had the ALJ incorporated these limitations into his RFC, the ALJ would have reached a more restrictive RFC. Doc. 25 at 3. The Court agrees. Indeed, several of the impairments that Dr. Krueger found would preclude Ms. Cordova from working altogether. According to the Program Operations Manual Systems ("POMS"), the following five abilities in which Dr. Krueger found Ms. Cordova markedly impaired are critical for performing *any* job: (1) "to maintain concentration and attention for extended period"; (2) "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (3) "to sustain an ordinary routine without special supervision"; (4) "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and

---

[9] The Medical Assessment form defined "moderate" as "[a] limitation that **seriously interferes** with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule." AR 19. The form explained that with moderate limitations, "[t]he individual may be able to perform this work-related mental function on a limited basis" but "should not be placed in a job setting where [the] mental function is critical to job performance or to job purpose." *Id*.

(5) the ability to respond appropriately to changes in (a routine) work setting." *Compare* Social Sec. Admin., DI § 25020.010(b)(2)(a)–(d), POMS, https://secure.ssa.gov/apps10/poms.nsf/lnx 0425020010 (last visited January 30, 2020) *with* AR 19–20. As Ms. Cordova put it, "these limitations are material in showing that there is a reasonable probability that [her] limitations preclude her ability to work." Doc. 17 at 13.

The Commissioner does not directly address the materiality of Dr. Krueger's report, focusing his arguments instead on a substantial evidence analysis. He does, however, maintain that Dr. Krueger's opinions are inconsistent with his own examination findings as well as with the record as a whole. Doc. 22 at 22. Although the Commissioner's arguments strike the Court as more suited to a substantial evidence review rather than a *de novo* review pursuant to 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5), judges in this District have at times considered allegations of inconsistency in assessing materiality. *See, e.g.*, *Copelin v. Saul*, No. 18-CV-0727 KK, 2019 WL 4739536, at *13 (D.N.M. Sept. 27, 2019) (rejecting the Commissioner's argument that the additional evidence was immaterial because the opinions contained therein were inconsistent with other medical records considered by the ALJ); *Tolbert-Taylor*, 2020 WL 376639, at *6 (finding no reasonable probability that additional evidence would change the outcome, where the Commissioner established that the additional evidence was internally inconsistent and "partially inconsistent with [the plaintiff's] hearing testimony"); *Emmons*, 2020 WL 376708, at *8–10 (rejecting the Commissioner's argument that the additional evidence from two medical sources did not have a reasonable probability of changing the outcome because it was internally inconsistent and inconsistent with the record).

First, the Commissioner argues Dr. Krueger's opinions that Ms. Cordova was disabled under multiple mental impairment listings are at odds with his records, which suggest that Ms.

16

Cordova "was well oriented and cooperative, with normal speech, and no evidence of hypomania, mania, hallucinations, or delusional thinking." Doc. 22 at 23 (citing AR 12). Like other medical sources in the record, Dr. Krueger *did* offer some normal psychological findings, including those highlighted by the Commissioner. At the same time, though, he described Ms. Cordova as "somewhat anxious" during her evaluation and opined that she "show[ed] ongoing evidence of post-traumatic stress disorder" following a 2015 fall into a sewer hole. AR 10, 12, 14. Dr. Krueger reviewed Ms. Cordova's medical records and conducted a clinical interview, and he also administered diagnostic tests, some of which revealed "significant functional impairment." AR 13–14. For instance, he administered the Beck Depression Inventory and reported that Ms. Cordova obtained a "highly elevated" score, implicating "serious difficulties with depression." *Id*. He also administered the Processing Speed Index Portion from the WAIS-IV, which revealed that Ms. Cordova has significant difficulty with the Symbol Search and Coding subtests. AR 13. Dr. Krueger reported the following:

> Ms. Cordova did have difficulty with both of these subtests. She obtained a scaled score of only 4 on the Symbol Search subtest, and she obtained a scaled score of 7 on Coding. From these two subtests scores, she obtained a Process Index score = 76 and this score falls within the 5th percentile. She does show evidence of having serious impairment with visual motor processing speed.

*Id*. In sum, although Dr. Krueger's psychological findings were normal in some areas, they suggested significant functional impairments in other areas. As a result, the Court is unwilling to characterize his report as immaterial on the basis of internal inconsistency.

Next, the Commissioner submits that Dr. Krueger's opinions are inconsistent with the record as a whole. Doc. 22 at 22. He emphasizes additional normal psychological findings in Ms. Cordova's treatment records, which the ALJ highlighted in reaching his conclusion that her depression and anxiety were not severe. *Id*. (citing AR 36–37). Despite the presence of some

17

normal mental findings throughout Ms. Cordova's treatment records, however, the Court remains unconvinced that the ALJ would reject Dr. Krueger's opinions as inconsistent with the record.

Again, Dr. Chari opined that Ms. Cordova had limitations consistent with those found by Dr. Krueger, including marked difficulties in maintaining concentration, persistence, or pace and in her activities of daily living. AR 774–75. Although the ALJ gave Dr. Chari's opinion little weight, he did so because he found his "opinion [was] not consistent with or supported by the record." AR 41. Given that Dr. Chari's opinions are consistent with those of Dr. Krueger, there is a reasonable probability that the ALJ's calculus for consistency with the record would be altered if he were to consider Dr. Chari's opinions alongside Dr. Krueger's opinions. Furthermore, and as discussed above, a diagnostic test administered by Dr. Krueger revealed that Ms. Cordova had a "serious impairment with her visual motor processing speed." AR 13. This finding lends support to the marked difficulties found by Dr. Chari, most notably in the area of maintaining concentration, persistence, and pace. Indeed, Dr. Krueger explained that because "Ms. Cordova does have serious difficulty with visual motor process speed, . . . she can be expected to have marked impairment with maintaining pace and persistence." AR 14. The ALJ did not have the benefit of these test results or Dr. Krueger's findings when he determined that Ms. Cordova had only a "mild limitation" in the area of "concentrating, persisting, or maintaining pace." AR 36. The Court concludes that there is a reasonable probability that the ALJ's consideration of Dr. Krueger's findings and opinions would alter his step-two findings and, more significantly, his RFC determination, which failed to include any mental limitations. Critically, if the ALJ were to adopt even some of the additional limitations found by Dr. Krueger, Ms. Cordova's RFC would be more restrictive and could preclude employment

altogether. The Court finds that Dr. Krueger's records are material and that there is a reasonable probability that they would change the outcome of Ms. Cordova's disability claim.

      B.      <u>Remaining Claims</u>

Ms. Cordova advances additional arguments in support of her Motion to Remand. However, because the Court concludes that remand is required as set forth above, it will not address these remaining claims of error. *See Chambers*, 389 F.3d at 1143 (explaining that it is for the Appeals Council to "determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision is contrary to the weight of the evidence currently of record"); *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

**VI.    Conclusion**

Having determined that the additional evidence submitted by Ms. Cordova is new, material, chronologically pertinent, and has a reasonable probability of changing the outcome of Ms. Cordova's disability claim, the Court finds that the Appeals Council erroneously failed to consider it. As such, the case must be remanded for review of the additional evidence as required under 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

IT IS THEREFORE ORDERED that Ms. Cordova's Motion to Reverse and Remand for a Rehearing (Doc. 17) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

                                                    Laura Fashing
                                                    United States Magistrate Judge
                                                    Presiding by Consent